**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANITA E. LAWTON-WAY,

      Plaintiff,

vs.                                               CASE NO.  3:05-cv-1233-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB").  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated June 6, 2006 (Doc. #10).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).  For the reasons set out herein, the Commissioner's decision is **REVERSED**.

**I. Procedural History**

Plaintiff initially filed for DIB on December 18, 2000 (Tr. 13).  A hearing was held before Administrative Law Judge ("ALJ") James Russell on March 11, 2003, and on June 17, 2003 he issued an unfavorable decision  (Doc. #13, p. 1; Tr. 13-19).  The Appeals Council then denied review of the ALJ's decision, making the hearing decision the final decision of the Commissioner (Tr. 3-5).  Plaintiff subsequently filed a complaint in the

district court, appealing the decision of the ALJ (Doc. #13, p. 1).

In that case, *Lawton-Way v. Barnhart*, Civil Action No. 3:03-cv-957-J-HTS (M.D. Fla. October 28, 2004) (unpublished decision), Plaintiff argued that since she makes such frequent trips to the United States Department of Veteran Affairs (the "VA") for treatment of her medical conditions, the ALJ erred by not posing a more complete hypothetical question to the vocational expert (*i.e.,* a hypothetical that included the number of times Plaintiff would have to miss work in order to attend medical appointments).  The district court reversed and remanded the case with instructions that the ALJ "consider and explain the weight given to the evidence regarding Plaintiff's frequent medical appointments and, if rejected, state the reasons therefore."  (Tr. 472-84).

After remand, the ALJ held another hearing on March 15, 2005 (Tr. 547-56).  At the subsequent hearing, Plaintiff testified that at the time of the initial 2003 proceeding she went to the VA five (5) to six (6) times per month in order to get treatment for her medical conditions (Tr. 552).  Plaintiff further testified that as of 2005 she continued to go to the VA with the same frequency as she did in 2003 (Tr. 552).  The ALJ commented during the hearing that he would later go through the record and count the number of times Plaintiff went to the VA for medical treatment (Tr. 565).

Subsequently, the ALJ issued an unfavorable decision on August 18, 2005 (Tr. 459-69).  In this decision, the ALJ rejected Plaintiff's assertion that she needs medical treatment five (5) to six (6) times per month (Tr. 466).  The ALJ stated that even though Plaintiff makes numerous trips to either the VA or the emergency room it was his opinion that those trips may not have been necessary (Tr. 466-67).  The ALJ stated that he based this finding on the fact that Plaintiff was often treated and sent home with Pepto-Bismol (an over-the-

counter medication) (Tr. 466-67).  Plaintiff now seeks the Court's review of the ALJ's 2005 decision.  (*See* Doc. #1, Complaint).

## II. Background Facts

Plaintiff was born on September 8, 1953 (Doc. #13, p. 2).  She was 51 years old at the time of the second hearing in 2005 (Doc. #13, p. 2).  She has a high school education, two years of college, and served twenty-three (23) years in the military (Tr. 463).  Her past relevant work includes the positions of mail clerk, supply clerk, administrative specialist, and food service administrator (Tr. 436; Doc. #13, p. 2).

In 1983, Plaintiff suffered a blow to her head from a large freezer door while working as a food service administrator (Tr. 27, 134).  This injury left Plaintiff in a coma for seven days (Tr. 27, 134).  In 1997, fourteen (14) years after being hit with the freezer door, Plaintiff medically retired from the military due to post traumatic migraines, dizziness, and blurred vision (Tr. 27, 169).  Plaintiff has also been diagnosed with Crohn's disease and irritable bowel syndrome, which require Plaintiff to take frequent bathroom breaks (Doc. #13, p. 2).

In 2000, Plaintiff was diagnosed with a brain tumor on her pituitary gland (Tr. 160).  Surgery was scheduled to remove the tumor in February 2001; however, Plaintiff cancelled the surgery in January 2001 because her mother died (Tr. 48).  At the time of the second hearing, in March 2005, Plaintiff had not yet rescheduled the surgery (Tr. 551, 563).  It appears from the record that Plaintiff is hesitant to undergo brain surgery without a second opinion from a private doctor or a biopsy of the tumor (Tr. 49, 151).  Plaintiff maintains that she cannot afford private medical care and the VA is not willing to pay for a private doctor's opinion or a biopsy (Tr. 49, 151).

Plaintiff further suffers from depression, anxiety, chronic headaches, random onsets of blurred vision, and loss of memory and concentration (Tr. 464). She also experiences abdominal pain, nausea, vomiting, and diarrhea due to irritable bowel syndrome (Tr. 464; Doc. #13, p. 4). Plaintiff testified that she gets fatigued during the day and that her niece and her "god-sister" do her housework (Tr. 557-58). Plaintiff stated that she attends church but does not drive because her vision gets sporadically blurry (Tr. 556).

Plaintiff also testified that she goes to the VA five (5) to six (6) times per month for treatment of her medical conditions (Tr. 559-60). Plaintiff further stated that she uses the bathroom up to ten (10) times per day (Tr. 554-55), and that taking such frequent breaks resulted in her being fired from her job at the Florida Board of Nursing (Tr. 555). Plaintiff's supervisor at the Board of Nursing stated that Plaintiff was terminated due to her job performance because she had difficulty remembering procedures and giving accurate information to callers (Tr. 515).

At the 2003 hearing, the ALJ posed a hypothetical question to the VE, which included the symptoms and limitations of Plaintiff's medical conditions (Tr. 58). Specifically, the hypothetical individual the ALJ described suffered impairments that included post-trauma to the head (causing headaches and concentration loss), Crohn's Disease, colitis, a growth on the pituitary gland (which contributes to headaches and blurred vision), major depression, and fatigue (Tr. 58).

The VE testified that given the aforementioned limitations, Plaintiff could return to her past relevant work as a mail room clerk (Tr. 59). The ALJ also asked the VE to testify as to whether significant jobs exist that Plaintiff could perform given her age, education, skill level, and RFC. To which, the VE answered in the affirmative and identified jobs such as

4

order caller, ticket seller, or office helper as defined by the *Dictionary of Occupational Titles*. The ALJ next inquired whether there would be an impact on the job base for the occupations of order caller, office helper, ticket seller and mail room clerk if the hypothetical plaintiff had to go to the bathroom as frequently as Plaintiff maintained (Tr. 63). The VE responded that the job base would be effected, that employers would have to make accommodations and that such an individual might have to agree to work an extra hour out of the day to make up for lost productivity (Tr. 63-64). Plaintiff's counsel then solicited testimony from the VE indicating that employers would only allow a hypothetical individual approximately one (1) day off per month to go to the doctor (Tr. 65).

The ALJ relied on the VE's testimony and found Plaintiff not disabled at Step 4 of the sequential evaluation process (Tr. 17-18). As an alternate ruling, the ALJ proceeded to Step 5 of the sequential evaluation process and found that, even if Plaintiff could not perform her past relevant work as a mail room clerk, there were significant jobs in the community that Plaintiff could perform, such as order caller, office helper, and ticket seller. (Tr. 19, Finding 10). Likewise, in his 2005 decision, the ALJ incorporated the VE's testimony from the prior 2003 hearing and found Plaintiff not disabled at Step 4 of the sequential evaluation process and made the same Step 5 alternate ruling (Tr. 467).

### III. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for

determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)[1]; *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

---

[1] All references made to 20 C.F.R. will be to the 2006 edition unless otherwise specified.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human S*erv's., 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### IV. Analysis

**A. Vocational Expert Testimony and the Hypothetical Questions**

Plaintiff's first argument is that the ALJ failed to fully develop the record by not posing a complete and accurate hypothetical to the vocational expert regarding Plaintiff's

limitations. Specifically, Plaintiff takes issue with the fact that the ALJ incorporated by reference the VE's testimony from the prior 2003 hearing.

At the 2003 hearing, the VE testified that based upon the limitations posed in the hypothetical question, Plaintiff could perform her past relevant work as a mail room clerk (Tr. 56-60). In his 2005 decision (as in his 2003 decision), the ALJ found that Plaintiff could return to her past relevant work as a mail room clerk at Step 4 of the sequential evaluation process (Tr. 17-19, Finding 8). In making this finding, the ALJ's reliance on the VE's prior testimony appears to be cautionary since the ALJ is under no duty to rely on VE testimony at Step 4 of the sequential evaluation process. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) ("The testimony of a vocational expert is *only* required to determine whether the claimant's residual functional capacity permits him [or her] to do other work *after* the claimant has met his [or her] burden of showing that he [or she] cannot do past work.") (*emphasis added*).

Additionally, Plaintiff argues that the ALJ failed to fully develop the medical record by incorporating the VE's testimony from the previous hearing and not posing a new hypothetical question with "any updated information about the Plaintiff's psychological health"(Doc. #13, p. 7). This argument is without merit because the most recent information concerning Plaintiff's psychological health indicates improvement. To illustrate, on November 24, 2003, Dr. Mohammad Ayubi stated that Plaintiff's major depression was resolved and he intended to discontinue her medication unless or until a clinical need arose (Tr. 538). Concerning Plaintiff's dementia secondary to head trauma, Dr. Ayubi stated it was "minimal" (Tr. 538). And on February 2, 2004, Plaintiff had "no major complaints...except mild to moderate sleep disturbance which could be menopausal

symptoms." (Tr. 536).

Plaintiff is correct that the ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). It is also true that when utilizing the services of a vocational expert, the posed hypothetical question must encompass all of the impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Here Plaintiff asserts the ALJ failed to fully develop the record by utilizing testimony concerning a hypothetical question posed to the VE during the 2003 hearing (Doc. #13, p. 7). However, Plaintiff bears the burden of establishing the existence of a disability and of producing evidence to support the claim of disability. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); 20 C.F.R. § 404.1512(a).

Here, Plaintiff has not come forward with any additional evidence of impairments that were not adequately addressed in the 2003 hypothetical question. Thus, the Court finds the record in this regard is complete and the ALJ has met his obligation in development of the record on this issue. Plaintiff's suggestion to the contrary simply lacks any foundation. Accordingly, the Court finds that Plaintiff's argument that the ALJ failed to fully develop the record by not posing a new hypothetical question to the VE concerning Plaintiff's psychological health is unpersuasive.

**B. Application of the Medical-Vocational Guidelines (the "Grids") with Regard to Sedentary Work**

Plaintiff's also argues that the ALJ's RFC finding is unclear regarding whether Plaintiff is capable of only performing sedentary or light work, and as such, the ALJ should have applied the Grids with regards to sedentary work (Doc. #13, p. 8-10). This argument, however, is unfounded. In his 2005 decision, the ALJ concluded Plaintiff had the RFC to

perform a range of sedentary and light work (Tr. 468, Finding 6). The ALJ further found that Plaintiff had additional limitations of being able to only perform simple, repetitive work with relatively large, easily visible objects (Tr. 468-69, Finding 6). According to the Regulations, if someone can do light work he or she can also do sedentary work. 20 C.F.R. § 404.1567(b).

The record in this case supports the ALJ's finding that Plaintiff can perform light work. For instance, on June 13, 2001, a consultative examination by Dr. C.V. Lazo revealed Plaintiff had no detectable deformity of the upper extremities (Tr. 389). Plaintiff had good range of motion with no atrophy, and her arm strengths were 5/5 (Tr. 389). Dr. Lazo found Plaintiff was able to lift 15 pounds with each hand and there was no impairment of fine or gross dexterities (Tr. 389). Plaintiff was able to heel, toe, tandem walk and squat with no difficulty and Plaintiff's gait and station did not appear to be impaired (Tr. 389-90).

On February 21, 2001, a state agency medical consultant indicated that Plaintiff could lift and carry 25 pounds frequently and sit for 6 hours in an 8 hour workday (Tr. 341). On July 19, 2001, another state agency physician indicated that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday, sit for 6 hours, and had unlimited ability to push and/or pull (Tr. 394).

Here, both state agency medical assessments clearly indicate that Plaintiff is capable of performing light and sedentary work, if not medium work.[2] Accordingly, the Court finds there is no evidence to support that Plaintiff is limited only to sedentary work.

Furthermore, Plaintiff misinterprets the record by claiming the ALJ's 2003 and 2005

---

[2] Medium work is defined as the ability to lift no more than 50 pounds at one time with frequent lifting of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

decisions are inconsistent regarding the level of work Plaintiff can perform (Doc. #13, p. 9). To support this contention, Plaintiff states that, although the ALJ found Plaintiff could perform light work in 2005, the ALJ found Plaintiff could only perform sedentary work in his 2003 decision, and that the two decisions are inconsistent and cause "confusion" as to Plaintiff's actual limitations (Doc. #13, pp. 8, 9). This argument is without merit.

In his 2003 decision, the ALJ found Plaintiff to have "the residual functional capacity to perform simple repetitive work...that would require her to lift 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday." (Tr. 19, Finding 7). This RFC finding is commensurate with the ability to perform light work, as defined by the Regulations.[3] In his 2005 decision, the ALJ found Plaintiff to have the residual functional capacity to perform a "range of sedentary and light work." (Tr. 468, Finding 6). If someone can perform light work, they are presumed to be able to also perform sedentary work. 20 C.F.R. § 404.1567(b).

Accordingly, the Court finds no inconsistency between the RFC findings contained within the two separate ALJ decisions that could cause confusion as to Plaintiff's limitations. Both decisions clearly state that the ALJ finds Plaintiff can perform sedentary and light work.

## C. Evidence Regarding Plaintiff's Frequent Medical Treatment

Although Plaintiff does not directly argue that the ALJ failed to carry out the district court's instructions that the ALJ consider and explain the weight given to the evidence regarding Plaintiff's frequent medical appointments (Tr. 483), the Court finds it necessary

---

[3] Light work is defined as the ability to lift no more than 20 pounds at one time with frequent lifting of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

to address this issue in order to clarify the record.

The Court does note that in his 2005 decision the ALJ improperly concluded that Plaintiff's trips to medical centers were not necessary. Whether or not Plaintiff's visits to the medical center were medically necessary constitutes impermissible medical opinion. The ALJ relied on the fact that Plaintiff was only given Pepto-Bismol (an over-the-counter mediation) in finding Plaintiff's medical visits were unnecessary. It is not the province of the ALJ to substitute his opinion for the medical opinion of treating physicians. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). Although this type of conclusory medical opinion should not have been made by the ALJ, an independent review of the medical record indicates Plaintiff does not actually go to medical centers *for medical treatment* as often as she testified.

To illustrate, some of Plaintiff's trips to the VA involved voluntary trips to see a social worker (Tr. 133, 150, 160). Furthermore, the record reflects that Plaintiff's actual treatment related visits to medical facilities are far less than she maintains. For example, from January 26, 2000 to December 14, 2000, Plaintiff went to a medical center only sixteen (16) times the entire year. (*See* Tr. 132, 134, 138, 144, 156, 157, 165, 167, 170, 186, 192, 193, 195, 197, 226, 229, 238). Plaintiff most frequently sought medical treatment in August of that year when she had three medical visits. (*See* Tr. 134, 138, 144).

Moreover, Plaintiff only saw doctors four (4) times in 2001–three visits of which were for dental appointments. (*See* Tr. 441-449). In 2002, Plaintiff saw medical doctors nine (9) times–two of which were dental appointments. (*See* Tr. 401, 417, 419-21, 426, 427, 434, 454). In 2003, Plaintiff made five (5) trips to see doctors–one of which was a dental appointment. (Tr. 537-39, 455). In 2004, Plaintiff made four (4) trips to medical facilities–

three (3) of which were dental appointments. (Tr. 534-36). And, finally, for the first three months of 2005, Plaintiff had been to see her primary care physician only twice. (*See* Tr. 517).

Accordingly, the Court finds that the record does not reflect that Plaintiff must be treated for her medical impairments five (5) to six (6) times per month. In fact, the medical evidence of record indicates that Plaintiff's frequency of medical visits would not require absence from work more than once per month on average. As the vocational expert testified that employers will tolerate up to one absence per month for medical reasons, Plaintiff's frequency of medical treatment visits would not preclude her from employment from the identified occupations. (*See* Tr. 65).

**D. Erosion of Plaintiff's Occupational Base**

Plaintiff's argument that the ALJ failed to clarify what erosion, if any, Plaintiff's frequent need to use the lavatory would have on her occupational base is, however, persuasive and requires remand of this case for clarification.

In determining Plaintiff's severe impairments, the ALJ found the pituitary disorder, Crohn's disease, post traumatic headaches and affective disorder were severe impairments (Tr. 465). The effects of an impairment are measured by the limitations to the ability to work. The ALJ must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). Plaintiff's alleged frequent bathroom breaks are limitations to her ability to work. Here, the ALJ did not make an express credibility finding related to Plaintiff's assertion of frequent bathroom visits. In fact, the ALJ appears to have accepted this testimony as true, given he included the limitation when posing the

13

hypothetical questions for the VE to consider (*see* Tr. 63-64).

The VE testified in 2003 that Plaintiff would need an employer accommodation in order to make up for lost productivity if she were to use the restroom every hour for ten (10) minutes (Tr. 64). The VE explained that some employers only allow employees to take one five (5) minute bathroom break before lunch and another five (5) minute break after lunch (Tr. 64). The VE stated that, based on his experience, employers would frown upon lost productivity, therefore, Plaintiff would need an accommodation or arrangement with her employer in order to allow her frequent lavatory breaks (Tr. 65).

After learning that Plaintiff would require a restroom break accommodation from a potential employer and posing this limitation to the VE in one of the hypothetical follow-up questions, the ALJ failed to inquire into whether such accommodations were possible given Plaintiff's job base or whether such an accommodation would erode her occupational base, and if so, to what degree. When vocational expert testimony is relied upon, such testimony should be developed under the proper standard. For instance, the ALJ has a "basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

Once the ALJ inquired into whether potential employers would tolerate frequent bathroom breaks, and the VE essentially responded in the negative, the ALJ acquired a basic obligation to probe into what level of erosion this would have on Plaintiff's occupational base. When adding this limitation to the posited hypothetical, the ALJ specifically included the occupation of mail room clerk, which is within Plaintiff's past relevant work. (*See* Tr. 63). The Court agrees with Plaintiff that the record is unclear as to what effect numerous bathroom breaks would have on the occupational base. Thus, the

finding that Plaintiff can return to past relevant work is not supported by substantial evidence.

### V. Conclusion

For the reasons stated herein, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Commissioner shall conduct additional proceedings consistent with this Court's findings.  It is suggested that testimony from a vocational expert should be solicited concerning whether employers within Plaintiff's occupational base are willing to grant prospective employees accommodations regarding the type of frequent bathroom breaks Plaintiff would need given Plaintiff's Chron's disease and irritable bowel syndrom, and determine what erosion of the occupational base, if any, would occur given Plaintiff's needed accommodation.

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this  28th  day of September, 2007.

Copies to all counsel of record
    and *pro se* parties, if any

*[signature: Thomas E. Morris]*
**THOMAS E. MORRIS**
United States Magistrate Judge